**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| IN RE: | ) ) ) | |
| ARAL MANAGEMENT GROUP OF FALL RIVER, INC.[1] | ) ) ) | CHAPTER 11 CASE NO. 19-13256-FJB |
| DEBTOR | ) ) ) | |

## AFFIDAVIT OF ROBERT ARRUDA IN SUPPORT OF DEBTORS' MOTION TO PAY PREPETITION WAGES AND MOTION FOR AUTHORITY TO USE CASH COLLATERAL

Pursuant to 28 U.S.C. § 1746, I, Robert Arruda, do hereby declare as follows:

1. I am the President and sole shareholder of Aral Management Group of Fall River, Inc. ("AMG Fall River"), Aral Management Group of Hyannis, Inc. ("AMG Hyannis"), Aral Management Group of Pembroke, Inc. ("AMG Pembroke"), Aral Management Group of Plymouth, Inc. ("AMG Plymouth"), and Aral Restaurant Group of South Weymouth, Inc. ("ARG S. Weymouth") (collectively, the "Debtors"). In this capacity, I am familiar with the Debtors' day-to-day operations, financial, and business matters.

2. I make this affidavit in support of the Debtors' Motion to Pay Prepetition Wages, Salaries, and Benefits and Use Existing Accounts and Business Forms ("Wage Motion") and Debtors' Motion for Order Authorizing Use of Cash Collateral ("Cash Collateral Motion")(collectively "First Day Motions").

3. Except as otherwise indicated, all statements in this affidavit are based upon (a) my personal knowledge as an officer, director, manager or member of the Debtors, (b) my

---

[1] Joint Administration requested. The other debtors in these chapter 11 cases are Aral Management Group of Hyannis, Inc. (19-13257), Aral Management Group of Pembroke, Inc. (19-13258), Aral Management Group of Plymouth, Inc. (19-13259), and Aral Restaurant Group of South Weymouth, Inc. (19-13260).

review of relevant documents, including the Debtors' books and records; (c) information supplied to me by other members of the Debtors' management and employees, or other professionals retained by the Debtors; and (d) my opinion based upon my experience and knowledge of the Debtors' operations and financial affairs.

4. As the President of the Debtors, I decided to file a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code (the "Bankruptcy Code") on September 26, 2019 (the "Petition Date").

5. I have reviewed the Debtor's voluntary petitions and the First Day Motions. The First Day Motions seek to ensure, among other things, the continuation of the Debtors' business operations without interruption, and to maintain the support and confidence of the Debtors' employees, suppliers, and customers, all of which will be critical to the Debtors' reorganization efforts.

**Background**

6. Each of the Debtors operates one Friendly's Restaurant as a franchisee of Friendly's Franchising, LLC at the following locations: 1021 Main Street, South Weymouth, MA, 02190 – 135 Mariano Bishop Blvd., Fall River, MA,02721 – 1090 Iyannough Road, Hyannis, MA. 02601 – 146 Church Street, Pembroke, MA, 02359 – 47 Long Pond Road, Plymouth, MA,02360

7. Collectively, the Debtors employ 134 people.

8. Prior to opening these Friendly's Restaurants, I worked for Friendly's Corp. for 21 years as a General Manager, District Manager, and finally as a Regional Director of Operations where I operated between 60-90 locations.

9. In 2012, I opened 6 Friendly's Restaurants.  By 2016, I was operating 10 Friendly's Restaurants throughout the South Shore.

10. Due to changes in customer preferences, diner-style dining has decreased in popularity and sales in the Debtors' stores have decreased over the past 4 years. At the same time, due to changes in state labor laws and regulations, the costs of operating have increased significantly.

11. As a result of decreased sales and increased costs, the Debtors fell behind on their meals taxes. Some of the Debtors' credit card receipt accounts were levied by the Department of Revenue, which created an existential threat to the Debtors' operations.

12. In order to continue operating, some of the Debtors obtained short-term financing from two high-interest lenders.

13. Though these high-interest loans temporarily assisted the Debtors, the weekly payments exceeded $11,000 and ultimately exacerbated the Debtors' financial difficulties.

14. The Debtors once again fell behind on their meals taxes and again faced levies of their credit card receipt accounts.

15. These levies would prevent the Debtors from having sufficient funds to pay their employees and critical vendors and would quickly cause the Debtors to cease operating. The Debtors filed the instant chapter 11 cases to stop the levies and preserve the going concern value of their businesses.

## Debtors' Assets and Liabilities

16. The Debtors' assets as of the Petition Date consist of used restaurant furniture, fixtures, and equipment, an inventory of paper products for the restaurant industry, an inventory of perishable foods, the Debtors' interests in certain commercial real estate leases, and the Debtors' rights under its franchise agreements with Friendly's Franchising, LLC. As of the case filings, the Debtors did not have any accounts receivables or cash.

17. I believe the liquidation value of the Debtors' assets is negligible and all of their pre-petition assets are encumbered by liens. A liquidation would likely result in no distribution to general unsecured creditors and would cause the loss of 134 jobs.

18. As described in more detail below, the Debtors' liabilities consist primarily of secured term loans, meals taxes, and obligations to utility companies and vendors.

**Northern Bank and Trust Company**

19. As of the Petition Date, the Debtors owed Northern Bank and Trust Company ("Northern Bank") approximately $1,363,823.40 under two separate notes both executed by all of the Debtors.

20. Northern Bank asserts a first lien on all of the Debtors' fixtures and personal property, including money, deposit accounts, contract rights, and proceeds thereof.

**Corporation Service Company, as Representative / OnDeck Capital**

21. As of the Petition Date, Corporation Service Company, as Representative was on record at the Masscahusetts' Secretary of State's office as having a second position security interest in AMG Fall River's personal property. AMG Fall River does not recognize this creditor but believes this lien may relate to its loan from OnDeck Capital.

22. At the time of the case filing, AMG Fall River owed OnDeck Capital approximately $5,461.52.

**CHTD Company / OnDeck Capital**

23. As of the Petition Date, CHTD Company was on record at the Masscahusetts' Secretary of State's office as having a second position security interest in AMG Pembroke and AMG Plymouth's personal property. These Debtors do not recognize this creditor but believes this lien may relate to their loans from OnDeck Capital.

24. At the time of the case filing, AMG Pembroke owed OnDeck Capital approximately $10,692.32 and AMG Plymouth owed OnDeck Capital approximately $6,553.84.

**Timberland Bank**

25. As of the Petition Date, ARG S. Weymouth owed Timberland Bank approximately $513,400.00 under three separate notes.

26. Timberland Bank asserts a second lien on all of ARG S. Weymouth's fixtures and personal property, including money, deposit accounts, contract rights, and proceeds thereof.

**Friendly's Restaurants, LLC and Friendly's Franchising, LLC**

27. As of the Petition Date, all of the Debtors owed Friendly's Restaurants, LLC and Friendly's Franchising, LLC approximately $55,000.00 under a certain promissory note and security agreement dated September 1, 2019.

28. Friendly's Restaurants and Friendly's Franchising assert a second or third lien in the Debtors' assets.  No evidence of this security agreement is on record.

29. All of the Debtors are liable for Northern Bank's claim for $1,363,823.40 and Friendly's Restaurant's claim for $55,000.00, so these amounts are duplicated in the list below.  The aggregate secured debt of all the Debtors is approximately $2,045,801.70.

   a. AMG Fall River: $1,515,155.52

   b. AMG Hyannis: $1,509.694.00

   c. AMG Pembroke: $1,893,394.00

   d. AMG Plymouth: $1,893,771.06

   e. ARG S. Weymouth.  $1,893,394.00

30. Some of the Debtors also owe real estate taxes and/or water and sewer charges pursuant to the terms of their leases. The property securing these obligations is not property of the bankruptcy estate. These amounts are including in the priority or unsecured claims below.

31. The Debtors' priority debts consist primarily of Massachusetts meals taxes, inclusive of penalties and interest, in the following amounts:

   f. AMG Fall River: $45,826.98

   g. AMG Hyannis: $45,656.12

   h. AMG Pembroke: $39,511.15

   i. AMG Plymouth: $30,464.58

   j. ARG S. Weymouth: $75,263.94

32. The Debtors' unsecured debts consist primarily of utility bills and vendors in the following amounts:

   k. AMG Fall River: $42,646.73

   l. AMG Hyannis: $83,585.54

   m. AMG Pembroke: $63,214.65

   n. AMG Plymouth: $52,390.00

   o. ARG S. Weymouth: $61,723.19

33. The Debtors are also approximately one to two weeks behind in their payments to U.S. Foods. U.S. Foods is the Debtors' most important vendor because they provide food to all the restaurants. The aggregate amount owed to U.S. Foods as of the petition date was approximately $50,000.00.

**Chapter 11 Proceedings**

34. The Debtors filed chapter 11 in order to reorganize their affairs. The Debtors represent my most profitable or strategically important stores. I am confident that given the opportunity to reorganize, the Debtors will be able to restore their cash flow and make a meaningful distribution to unsecured creditors.

**Cash Collateral Motion**

35. The Debtors filed the Cash Collateral Motion seeking authority to use cash collateral in which some or all of the Lenders may assert an interest. Attached to the Cash Collateral Motion is a budget showing the Debtors' projected receipts and disbursements during the period for which cash collateral usage is requested. The Debtors require the use of cash collateral to pay the usual and necessary expenses of operating their businesses, including the costs of purchasing inventory and paying payroll. The proposed use of cash collateral includes the payment of all expenses necessary to maintain their operations and the value of their assets. As is demonstrated by the Cash Collateral Motion, the Debtors have sufficient cash collateral to fund their operations and maintain their assets during the period for which cash collateral usage is requested.

36. Absent the use of the cash collateral, the Debtors would be required to cease operations, resulting in the forced liquidation of their assets. Given the amount owed to Northern Bank and the modest value of the Debtors' assets, upon a liquidation, it is extremely unlikely that any creditor other than Northern Bank would receive payment.

37. The forced liquidation of the Debtors would also result in the loss of 134 jobs.

38. The approval of the use of cash collateral on the terms set forth in the Cash Collateral Motion is therefore in the best interest of the Debtors' bankruptcy estate, their creditors, and all parties in interest.

39. I prepared the budget attached to the Cash Collateral Motion and I believe it represents reasonable projections for the Debtors operations over the period for which cash collateral usage is requested.

**Wage Motion**

40. The Debtors' filed the Wage Motion in order to pay their employees their prepetition wages in the ordinary course of business, and to pay the related tax and benefit obligations, and to honor the Debtors' vacation and sick time obligations. Under the Debtors' standard payroll procedures, the payrolls are processed bi-weekly in arrears – on the Friday of the week following the relevant weekly pay period. AMG Fall River, AMG Hyannis, AMG Pembroke, and AMG Plymouth have their regularly scheduled pay day today, September 27, 2019 for the period from September 9, 2019 through September 22, 2019. ARG S. Weymouth's next scheduled pay day is October 4, 2019 for the period from September 16, 2019 through September 29, 2019. The total amount of the Debtors' prepetition payroll obligations is approximately $74,480.73 of which $50,180.80 is to be paid on September 27, 2019. The Debtors' also offer full time employees up to 80 hours of paid vacation a year and up to five (5) days' sick pay per employee per year.

41. No employee will receive more than $13,650.00 on account of payment of the prepetition wage obligations and the continued compliance with the Debtors' vacation and sick leave policies.

42. The Wage Motion also requests authority to pay health insurance and workers compensation premiums in the ordinary course. I understand the proposed payments will not exceed the statutory cap of § 507(a)(5).

43. Finally, the Debtors request authority to use existing payroll accounts and business forms for a limited period of time to allow the payments requested to be made to be honored in the ordinary course of business.

44. It is crucial that the Debtors be permitted to pay their prepetition wage obligations, to fund their benefit programs, and to honor prepetition vacation and sick pay in the ordinary course of business. A potential loss (or delay in receipt) of earned wages or salaries would impose a hardship on the employees, may damage employee morale and may result in the loss of employees at a critical time in these cases. Approval of such payments will assist in maintaining the continuity of the Debtors' businesses and will preserve the value of the Debtors' operations, assets and bankruptcy estates.

*[remainder of page intentionally blank]*

I declare under the pains and penalties of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Respectfully submitted,

_____
Robert Arruda, President

Dated: September 27, 2019